# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**KYLE BROUSSARD, ET AL.**                    **CIVIL ACTION**

**VERSUS**

**GO-DEVIL MANUFACTURING CO.**              **NO.: 3:08-cv-00124-BAJ-SCR**
**OF LA., INC. D/B/A GO-DEVIL**
**MANUFACTURERS OF LOUISIANA,**
**INC.**

## CONSOLIDATED WITH[1]

**KYLE BROUSSARD, ET AL.**                    **CIVIL ACTION**

**VERSUS**

**MUD BUDDY, LLC D/B/A**                     **NO.: 3:08-cv-00125-BAJ-RLB**
**MUD BUDDY MANUFACTURING**

## RULING AND ORDER

Before the Court is Plaintiff Gator Tail, LLC's ("Gator Tail") **MOTION TO STRIKE (08-cv-00124 Doc. 99),** requesting that "the Court strike the declaration of Steven Wells and strike Dr. Garris's supplemental report and all exhibits thereto," (*id.* at p. 1).[2] Defendant Go-Devil Manufacturing Co. of La., Inc. ("Go-

---

[1] The Court consolidated civil actions 3:08-cv-00124-BAJ-SCR and 3:08-cv-00125-BAJ-RLB for the *Markman* hearing and for trial before the bench on the issue of patent validity, pursuant to Rule 42(a)(1). (*See* Docs. 82, 90).

[2] Gator Tail simultaneously filed its Motion to Strike in the docket for the related case, *Kyle Broussard, et al. v. Mud Buddy, LLC D/B/A Mud Buddy Manufacturing*, No. 3:08-cv-00125-BAJ-RLB. (*See* Doc. 119). Presumably this is because Mud Buddy, LLC ("Mud Buddy")—the defendant in civil action 08-cv-00125—had previously joined in Go-Devil's Motion for Summary Judgment, which relied, in part, on Dr. Garris's supplemental report, and Mr. Wells's declaration. (*See* 08-cv-00124 Doc. 91-4 (Dr. Garris's Supplemental Report, dated Nov. 6, 2013); Doc. 91-10 (Mr. Wells's Declaration, dated Oct. 29, 2013); 08-cv-00125 Doc. 115 (Mud Buddy's Motion for Summary

Devil") opposes the motion. (Doc. 108). Gator Tail has filed a reply addressing the arguments raised in Go-Devil's opposition memorandum. (Doc. 113). For the following reasons, Gator Tail's MOTION TO STRIKE is GRANTED.

## I.    BACKGROUND

The relevant factual and procedural history is as follows. Plaintiff Gator Tail, LLC owns certain patents, each related to outboard air-cooled motors, apparatuses, and assemblies for use on boats in shallow water and muddy environments.[3] (08-cv-00124 Doc. 82 at pp. 2–3). On February 28, 2008, Gator Tail sued Go-Devil alleging infringement. (Doc. 1). Specifically, Gator Tail alleged that Go-Devil infringed on its patents by "making, using, offering for sale, and selling within the United States outboard air-cooled motors, apparatuses, and assemblies covered by the one or more claims in the patents." (*Id.* at ¶ 12). In response, Go-Devil denied Gator Tail's allegations, and also raised a number of affirmative defenses, including that Gator Tail's patents are invalid and/or unenforceable. (Doc. 22 at ¶¶ 22–24).

---

Judgment "adopt[ing] and re-urg[ing] the arguments set forth in [Go-Devil's] Motion for Summary Judgment")). Significantly, Mud Buddy has *not* responded to Gator Tail's Motion to Strike. The Local Rules for the Middle District of Louisiana require that "[e]ach respondent opposing a motion shall file a response . . . within 21 days after service of the motion." M.D. La. LR7.4. In this instance, where Mud Buddy has failed to respond to Gator Tail's non-dispositive Motion to Strike, the Court could summarily grant Gator Tail's request, at least insofar as it relates to Mud Buddy. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006). However, because these actions have been consolidated for trial on the issue of patent validity, the Court will assume that Mud Buddy also intended to join Go-Devil's opposition to Gator Tail's motion to strike. Accordingly, this Order will apply equally to *all* parties in actions 08-cv-00124 *and* 08-cv-00125.

[3] The patents at issue are numbered U.S. Patent No. 7,052,340, and U.S. Patent No. 7,297,035. The Court will refer to these patents, collectively, as "the patents."

Case 3:08-cv-00125-BAJ-RLB   Document 133   01/23/14   Page 2 of 24

On September 24, 2008, and again on October 13, 2008, the parties filed motions styled JOINT PROPOSED SCHEDULING ORDER (Doc. 27). On October 15, 2008, pursuant to the parties' stipulated discovery schedule, the Magistrate Judge issued a "Case Management Order," which established the following deadlines:

**October 10, 2008:** Deadline to exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

**December 31, 2008:** Deadline to file motion to join other parties and amend pleadings.

**November 30, 2009:** Deadline to disclose identities and resumes of expert witnesses.

**February 1, 2010:** Deadline to serve expert reports.

**March 1, 2010:** Deadline to complete fact discovery.

**March 30, 2010:** Deadline to serve rebuttal expert reports.

**March 30–June 30, 2010:** Timeframe for taking expert depositions.

**June 30, 2010:** Deadline to complete expert discovery.

**August 2, 2010:** Deadline to exchange proposed constructions of the claims of the patents-in-suit.

**August 31, 2010:** Deadline to exchange initial briefs on claim construction as to any disputed issues of claim construction.

**September 15, 2010:** Deadline to file response briefs on issues of claim construction.

**September 30, 2010:** Deadline to submit joint motion requesting a *Markman* hearing, as necessary.

3

**November 1, 2010:** Deadline to exchange list of proposed exhibits and witnesses parties intend to produce at *Markman* hearing.

**Within 30 days of the Court's *Markman* decision:** Deadline to submit summary judgment motions.

**At least 10 days prior to the scheduled date for final pretrial conference:** Deadline to submit all pretrial submissions, including trial briefs, lists of witnesses, lists of exhibits, agreed statements of facts, substantive jury instructions, and motions *in limine*.

(*See* Doc. 28 at pp. 1–8). The Case Management Order further provided that "[w]ithin ninety (90) days before the close of fact discovery . . . each party shall serve on the other party a list of each fact witness (including any expert witness who is also expected to give fact testimony) that it intends to call at trial," and that "[w]ithin sixty (60) days before the close of fact discovery, each party shall serve a list of each rebuttal fact witness that it intends to call at trial, if known at that time." (*Id.* at p. 5).

Following entry of this Order, and in response to the parties various requests, the Magistrate Judge issued a series of orders revising the case management deadlines. (*See* Doc. 31 (Joint Proposed Revised Scheduling Order, dated Mar. 13, 2009); Doc. 32 (Magistrate Judge's Order setting new case management deadlines, dated Mar. 16, 2009); Doc. 45 (Joint Motion to Revise Scheduling Order, dated Aug. 27, 2009); Doc. 46 (Magistrate Judge's Order granting Joint Motion to Revise Scheduling Order and setting new deadlines, dated Sept. 1, 2009); *see also* Doc. 47; Doc. 48; Doc. 49; Doc. 50; Doc. 51; Doc. 52)). The order most significant to Gator

4

Tail's Motion to Strike is dated September 1, 2009. (*See* Doc. 46). In this Order, the Magistrate Judge revised the deadlines as follows:

**October 23, 2009:** Deadline to exchange expert reports.

**December 4, 2009:** Deadline to complete fact discovery.

**December 28, 2009:** Deadline to exchange rebuttal expert reports.

**December 28, 2009 – March 26, 2010:** Timeframe for taking expert depositions.

**March 26, 2010:** Deadline to complete expert discovery.

**April 30, 2010:** Deadline to exchange proposed constructions of the claims of the patents-in-suit.

**May 28, 2010:** Deadline to exchange initial briefs on claim construction as to any disputed issues of claim construction.

**June 11, 2010:** Deadline for filing response briefs on issues of claim construction.

**June 25, 2010:** Deadline to submit joint motion requesting a *Markman* hearing, as necessary.

**June 30, 2010:** Deadline to exchange list of proposed exhibits and witnesses parties intend to produce at *Markman* hearing.

(Doc. 46 at pp. 1–2). After issuing this Order, and at the parties' joint requests, the Magistrate Judge twice reset the deadline to exchange rebuttal expert reports. (*See* Doc. 48; Doc. 50). The final operative deadline for exchanging expert rebuttal reports was January 18, 2010. (Doc. 50).

After the discovery period ended, the parties requested a hearing on claim construction pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370

(1996). (Doc. 58). However, on August 11, 2010 Go-Devil filed a motion to stay proceedings based on defendant Mud Buddy's request that the U.S. Patent and Trademark Office ("USPTO") re-examine the patents at issue in each action. (Doc. 59; *see also* 08-cv-00125 Doc. 62 (Order granting stay of proceeding pending the outcome of the USPTO re-examination)). The parties discussed Gator Tail's request for a stay at a status conference on September 29, 2010, but the Court did not immediately rule on Gator Tail's Motion. (*See* Doc. 66). Instead, upon completion of the USPTO re-examination,[4] Gator Tail withdrew its stay request. (*See* Doc. 63 (Gator Tail's Notice of Termination of Re-examination); Doc. 66 (Gator Tail's Motion to Withdraw Motion to Stay Proceedings)). The Court granted Gator Tail's request to withdraw its Motion to Stay on March 21, 2011. (Doc. 67).

The Court held *Markman* hearings on October 3, and December 5, 2011. (08-cv-00124 Doc. 82 at p. 1). Following the *Markman* hearings, the parties submitted post-hearing briefs on the various claim construction issues. (Doc. 76; Doc. 78; Doc. 80; Doc. 81). Post hearing briefing concluded on September 26, 2012, (*see* Doc. 81), and this Court issued its Ruling on Construction of Disputed Terms on June 25, 2013, (Doc. 82). Then, on October 31, 2013, upon stipulation of the parties, the Court set dates for a consolidated bench trial on the issue of patent validity, and, as necessary, individual trials on the issue of patent infringement. (Doc. 90; Doc. 95).

---

[4] Upon re-examination, the USPTO reaffirmed the validity of the patents at issue. (*See* Doc. 63; (08-cv-00124 Doc. 103-3 (Ex Parte Re-examination Certificate, U.S. Patent No. 7,052,340); Doc. 103-4 (Ex Parte Re-examination Certificate, U.S. Patent No. 7,297,035)).

6

Specifically, the Court scheduled the consolidated trial on patent validity to begin January 27, 2014. (Doc. 95).

On November 8, 2013, a week after the Court set the January 27 trial date, Go-Devil filed its Motion for Summary Judgment as to Patent Invalidity.[5] This Motion relied, in part, on documents which had not previously been disclosed to Gator Tail. Specifically, Go-Devil's summary judgment motion cited a Supplemental Expert Report prepared by Dr. Charles A. Garris, dated November 6, 2013, (Doc. 91-4), and a Declaration by Mr. Steven Wells, President of Scavenger Backwater Motors, dated October 29, 2013, (Doc. 91-10). Gator Tail opposed Go-Devil's summary judgment request, (Doc. 103), and also filed the Motion to Strike that is the subject of this Order. (08-cv-00124 Doc. 99; 08-cv-00125 Doc. 119). Specifically, Gator Tail "ask[ed] the Court to strike the declaration of Steven Wells and strike Dr. Garris's supplemental report and all exhibits thereto." (08-cv-00124 Doc. 99 at p. 1).

On January 6, 2014, this Court denied Go-Devil's motion for summary judgment, determining that "the USPTO's findings on re-examination of Gator Tail's patents" were sufficient "evidence of the patents' validity" to "create a genuine issue of fact requiring trial." (Doc. 111 at p. 7). Because the Court determined that the USPTO re-examination certificates, standing alone, were sufficient to create a genuine issue of fact as to the validity of the patents at issue, the Court did not need

---

[5] Mud Buddy filed its own Motion for Summary Judgment as to Patent Invalidity, which simply "adopt[ed] and re-urge[d] the arguments set forth in [Go-Devil's] Motion for Summary Judgment." (08-cv-00125 Doc. 115 at pp. 1–2).

to consider the content of Dr. Garris's Supplemental Report, or Mr. Wells's Declaration. Accordingly, the Court denied as moot Gator Tail's Motion to Strike, insofar as it related to Go-Devil's Motion for Summary Judgment. (*Id.* at pp. 1–2).

The Court now considers Gator Tail's Motion to Strike as it relates to trial on the issue of patent validity. Oral argument is not necessary.

## II. DISCUSSION

Gator Tail moves to strike Dr. Garris's Supplemental Report on the ground that it "was produced far too late and incorrectly applies an incorrect methodology." (Doc. 99 at p. 1). Gator Tail moves to strike Mr. Wells's Declaration because "Mr. Wells was not disclosed as a potential fact witness in violation of Fed. R. Civ. P. 37." (*Id.*).

### A. Dr. Garris's Supplemental Report

#### i. Timeliness

Federal Rule of Civil Procedure ("Rule") 26 provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case . . . ." Fed. R. Civ. P. 26(a)(2)(B). The report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

8

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)–(vi). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Local Rule 16.1 establishes that patent cases are subject to the requirements of a scheduling order, and that "[t]he magistrate judges of this court are authorized to enter and/or modify scheduling orders in matters referred to them." M.D. La. LR16.1.

Additionally, "parties must supplement these disclosures when required under Rule 26(e)." Fed. R. Civ. P. 26(a)(2)(E).

> Specifically, a party is required to supplement its expert disclosures if the court so orders or if "the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 570 n.42 (5th Cir. 1996) (quoting Fed. R. Civ. P. 26(e)(1)(A)). Further, "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement

9

extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Rule 26(a)(3) provides that pretrial disclosures must be made at least thirty days before trial "[u]nless the court orders otherwise." Fed. R. Civ. P. 26(a)(3)(B).

Gator Tail asserts that Dr. Garris's Supplemental Report, served with Go-Devil's Motion for Summary Judgment on November 8, 2013, is untimely because (1) "Go-Devil's deadline to serve Dr. Garris's report was October 23, 2009," and (2) "Go-Devil never moved for leave to supplement Dr. Garris's report after the deadline." (Doc. 99-1 at p. 2). Go-Devil tacitly concedes that Dr. Garris's Supplemental Report is untimely, having failed to offer *any* argument as to why the report may be timely despite having been produced four years after the October 23, 2009 deadline for exchanging expert reports. (*See* Doc. 108 at pp. 4–9).

This Court agrees with Gator Tail that Dr. Garris's November 6, 2013 supplemental report is untimely under the September 1, 2009 scheduling order. This Court further determines that Dr. Garris's Supplemental Report is not otherwise timely under Rule 26. The Supplemental Report candidly states that it is comprised of "additional reasons why the patents are invalid which were not addressed in [Dr. Garris's] original report." (Doc. 91-4 at pp. 4–5). However, the U.S. Fifth Circuit Court of Appeals has admonished that such an offer of "additional

10

reasons"—i.e. *new* opinions—is *not* the purpose of a supplemental report. Rather, "[t]he purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club*, 73 F.3d at 571. Accordingly, the Court determines that Dr. Garris's Supplemental Expert Report—produced more than four years after the deadline for exchanging expert reports, more than three-and-a-half years after the deadline to complete expert discovery expired, without having sought or obtained leave from the Court, and as part of Go-Devil's Motion for Summary Judgment—is untimely.

### ii. Sanctions

Rule 37 provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining whether to strike an expert's testimony for a party's failure to properly and timely disclose required information, the Court considers the following factors:

(1) the importance of the witness's testimony;

(2) the prejudice to the opposing party of allowing the witness to testify;

(3) the possibility of curing such prejudice by a continuance; and

(4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

While Go-Devil does not contest that its production of Dr. Garris's Supplemental Expert Report was untimely, it argues that these factors favor denying Gator Tail's Motion to Strike. The Court considers each factor in turn.

### 1. The importance of Dr. Garris's testimony in his Supplemental Expert Report

First, Go-Devil argues that Dr. Garris's Supplemental Report should remain in the record because the information it contains "is highly relevant and important," particularly in light of "the Court's claim construction in its *Markman* order." (Doc. 108 at pp. 4–5). Undoubtedly, Dr. Garris's opinions are important to Go-Devil's defense. Such is frequently true in patent cases, "where the evidence is largely the testimony of experts." *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 336 U.S. 271, 274 (1949), *adhered to on reh'g*, 339 U.S. 605 (1950). However, in the words of the U.S. Fifth Circuit, "[e]ven granting that the expert testimony [is] significant the importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996) (quotation marks and alterations omitted). Indeed, "the claimed importance of [Go-Devil's] expert testimony merely underscores the need for [Go-Devil] to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not possible." *See id.*; *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004).

12

Additionally, other statements made by Go-Devil cause this Court to question the significance of Dr. Garris's Supplemental Report to its defense. For example, Go-Devil asserts that Dr. Garris's Supplemental Report "reflect[s] information known to all parties well ahead of the preparation of the supplemental report." (Doc. 108 at p. 5). Presumably, then, this "known" information could have been made part of Dr. Garris's original report. Indeed, the opinions expressed in Dr. Garris's Supplemental Report—"(1) the invalidity of the '340 and '035 patents under 35 U.S.C. § 103 as being obvious . . . and (2) the lack of enablement in either the '340 or the '035 patent," (Doc. 91-4 at p. 5)—are also stated in Dr. Garris's original Report dated October 22, 2009. (*See* Doc. 91-1 at p. 7). Gator Tail's Motion to Strike does not seek the wholesale exclusion of Dr. Garris's testimony; it simply seeks a limitation on Dr. Garris's ability to offer opinions based on *new* bases not previously disclosed. In other words, Dr. Garris may still testify to the opinions expressed in his original, timely Report, which included his opinions on the issues of obviousness and lack of enablement.

In sum, the Court determines that the testimony offered in Dr. Garris's Supplemental Report is not so important as to weigh in favor of admission, given Go-Devil's failure to "compl[y] with the court's deadlines or at least inform[] the

13

[Court] in advance if good faith compliance was not possible."[6]  *Barrett*, 95 F.3d at 381.

2. The prejudice to Gator Tail of allowing Dr. Garris to offer the opinions expressed in his Supplemental Expert Report

Next, Go-Devil argues that Gator Tail is not prejudiced by admitting Dr. Garris's Supplemental Report.  Go-Devil claims this is so because Gator Tail's "expert mechanical engineer, Dr. Matthews, has already fully responded in his recent declaration to the issues in Dr. Garris' supplemental report," and, in any event, Gator Tail "can depose Dr. Garris regarding those issues ahead of the trial date without need of a continuance." (Doc. 108 at p. 5).

This Court is not satisfied with either of Go-Devil's explanations for why Gator Tail is not prejudiced.  First, Go-Devil is hardly in an authoritative position to say whether Dr. Matthews's Declaration is an adequate response to the new opinions offered in Dr. Garris's Supplemental Report. Second, and more significant, Go-Devil's assertion that Gator Tail can adequately "depose Dr. Garris . . . without need of a continuance" is nothing short of specious.  To repeat, Go-Devil first

---

[6] Gator Tail bolsters its argument regarding the importance of Dr. Garris's Supplemental Report by quoting an unpublished order by the Honorable Arthur J. Boylan in the U.S. District Court for the District of Minnesota for the proposition that "there is a public interest in invalidating patents that are anticipated or obvious." (Doc. 108 at p. 5 (quoting *Hysitron Inc. v. MTS Sys. Corp.*, No. 07-1533, 2010 WL 55987 at * 5 (D. Minn. Jan. 4, 2010)).  Conspicuously absent from Gator Tail's citation is the *next* sentence from Judge Boylan's order, which admonishes: "At the same time, a defendant should not be permitted to 'sandbag,' by holding back prior art it knows of until plaintiff commits to a claim construction that defendant hopes will be rendered obvious by that prior art." *Hysitron*, 2010 WL 55987 at * 5.  In short, this Court is not convinced that Go-Devil's introduction of Dr. Garris's Supplemental Report—*after* this Court issued its ruling on claim construction, and as an exhibit to its Motion for Summary Judgment—is not precisely the type of "sandbag[ging]" that Judge Boylan cautioned against. *See id.*

14

produced Dr. Garris's Report on November 8, 2013, in conjunction with its Motion for Summary Judgment. (*See* Doc. 91). Even a minor delay in complying with disclosure requirements may disrupt an opponent's preparation for trial. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (recognizing that a two-week delay in designating an expert witness was sufficient to disrupt the court's discovery schedule and opponent's preparation for trial). While Gator Tail "might not suffer the degree of unfair surprise associated with the last-second designation of an unscheduled witness," *id.*, there is *some* prejudice inherent to being forced to make late adjustments in trial preparation. Go-Devil produced Dr. Garris's Supplemental Report in conjunction with its Motion for Summary Judgment on November 8, 2013, little more than a month in advance of the final pretrial conference on December 9, 2013, and ten weeks before the scheduled trial date of January 27, 2014. Allowing Go-Devil to supplement Garris's report so late in the game would require Gator Tail to simultaneously prepare for trial, ward off Go-Devil's summary judgment motion, depose Dr. Garris, *and* prepare supplemental expert testimony to rebut Dr. Garris's untimely testimony. *See Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997).

This Court has little trouble determining that Gator Tail would be prejudiced by Go-Devil's maneuver. *See Sierra Club*, 73 F.3d at 573 (where party who had not complied with Rule 26 provided more detailed information in a supplemental report approximately two months before trial, the delay would have likely prejudiced the

15

opposing party). In such instances, "the trial court has latitude to control discovery abuses and cure prejudice by excluding improperly designated evidence." *Id.*; *see also Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 257–58 (5th Cir. 1997) (where plaintiff attempted to supplement an expert's report two months from the final pretrial conference, the district court had the discretion to deny the request to supplement).

In sum, the Court determines that the second factor also weighs in favor of striking Dr. Garris's Supplemental Report.

### 3. The possibility of curing such prejudice by a continuance

Go-Devil insists that even if "negligible prejudice" exists, such prejudice can be cured by allowing Gator Tail to depose Dr. Garris and, further, that Gator Tail "can depose Dr. Garris regarding those issues ahead of the trial date without need of a continuance." (Doc. 108 at p. 5). This Court has just explained its position that Go-Devil's view of what can be accomplished in advance of trial is unrealistic. And while a continuance may cure the above-cited prejudice, it would also result in additional delay, increase the expense incurred by all parties to this lawsuit, and require the expenditure of further Court resources. *Hamburger*, 361 F.3d at 883; *see also Barrett*, 95 F.3d at 381. More importantly, Go-Devil has not given the Court any reason to believe that a continuance would deter its dilatory behavior in the future. *See Barrett*, 95 F.3d at 381. Indeed, "a continuance does not, in and of itself, deter future dilatory behavior, nor serve to enforce local rules or court

16

imposed scheduling orders."[7] *Id.* (quotation marks omitted); *see also Sierra Club*, 73 F.3d at 573. Accordingly, this factor, too, weighs in favor of striking Dr. Garris's Supplemental Report.

### 4. Go-Devil's explanation for failing to comply with the discovery order

Finally, Go-Devil insists that its late production of Dr. Garris's Supplemental Report was substantially justified based on "the Court's broad *Markman* ruling." (Doc. 108 at pp. 5–6). Further, Go-Devil "emphasizes that the original expert reports in this matter were submitted more than *four years* ago," and asserts that "[t]he passage of so much time is, alone, ample justification for the supplementation of expert reports." (*Id.* at p. 6 (emphasis in original)).

This Court is not satisfied with Go-Devil's explanations for its delay. As to Go-Devil's first point, this Court issued its *Markman* Ruling on June 25, 2013. (Doc. 82). Rather than inform Gator Tail of its intent to supplement Dr. Garris's original report at that time—or, better yet, seek leave of Court to supplement— Gator Tail waited until November 8, 2013, only producing the Supplemental Report after a trial date had been set, as part of its Motion for Summary Judgment. "[T]he Court's broad *Markman* ruling" simply does not address the nearly four-and-a-half months of radio silence that preceded production of Dr. Garris's Supplemental Report.

---

[7] Chief among the reasons that the Court believes a continuance would serve little purpose is that Go-Devil has not offered a legitimate reason for its delay, as discussed in the next section.

17

Next, Go-Devil offers no authority whatsoever for its argument that "[t]he passage of [four years] time is, alone, ample justification for the supplementation of expert reports." Indeed, as explained by Gator Tail in its reply brief, Go-Devil is hard-pressed to do so because its argument "makes no sense." (Doc. 113 at p. 9). This is because

> Dr. Garris's report and supplement address the issue of patent invalidity due to prior art. The world of prior art to the [Gator Tail] patents was fixed and determined by the time the [Gator Tail] patent applications were submitted. It is by definition, *prior*. No delay after that time, not even four years, would change the past and give rise to more prior art.

(*Id.* (emphasis in original)).[8]

Accordingly, this Court determines that the fourth factor also weighs in favor of striking Dr. Garris's Supplemental Report.

In sum, having weighed the factors, the Court agrees that Dr. Garris's Supplemental Expert Report and all exhibits thereto must be stricken from the record. Fed. R. Civ. P. 37(c); *Sierra Club*, 73 F.3d at 572. Thus, Gator Tail's Motion to Strike shall be granted, and Go-Devil shall not be allowed to introduce Dr. Garris's Supplemental Expert Report, the exhibits attached thereto, or testimony regarding opinions contained therein, at trial.

---

[8] Based on this Court's determination that Dr. Garris's Supplemental Report is properly stricken under Rule 37, it does not address Gator Tail's alternative argument that the Report should be excluded under Federal Rule of Evidence 702 because Dr. Garris employed unreliable methods in reaching the opinions contained in the new report. (*See* Doc. 99-1 at pp. 4–7).

18

### B. Mr. Wells's Declaration

Gator Tail also "asks the Court to strike the declaration of Steven Wells." (Doc. 99 at p. 1). As an initial matter, the Court notes that Go-Devil submitted Mr. Wells's declaration as an exhibit to Dr. Garris's Supplemental Report. Accordingly, Gator Tail's request to "strike Dr. Garris's supplemental report and all exhibits thereto," (Doc. 99 at p. 1)—which the Court grants—includes the Wells Declaration.

But the result is the same even if Mr. Wells's Declaration is considered separate from Dr. Garris's Supplemental Expert Report. Here, again, Go-Devil does not dispute that its production of the Wells Declaration was untimely. (*See* Doc. 108 at pp. 1–2). Instead, as before, Go-Devil insists that it should not be sanctioned for violating Rule 26 and this Court's discovery orders because it "was substantially justified in not disclosing Wells sooner, and the disclosure is harmless to [Gator Tail]." (*Id.*).

The test for assessing whether a violation of Rule 26 is harmless, and thus whether a court should allow the evidence to be used at trial, is substantially similar to the test for determining whether to strike expert testimony that is improperly and/or untimely disclosed. Again, the Court weighs "four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Go-Devil insists that "Steven Wells' declaration . . . is extremely relevant and probative as to the issue of validity of the subject patents" because "[t]he declaration of Mr. Wells is a recitation of undisputed facts that bear *directly* on whether the subject patents are obvious in light of prior art." (Doc. 108 at p. 2 (emphasis in original)). Gator Tail disagrees with this characterization of the Wells Declaration, insisting instead that it is merely "cumulative of prior evidence." (Doc. 113 at p. 4).

In sum, the Wells Declaration consists of five paragraphs. (*See* Doc. 91-10). In substance, the declaration states: (1) Stevens Wells is the President of Scavenger Backwater Motors; (2) Scavenger has been selling its motors since 1999; (3) "[t]he basic design of the Scavenger Backwater Boat Motor has not changed since 1999"; and (4) Scavenger maintains a website containing photos, videos, drawings, and "other information, [which] accurately depicts the Scavenger Backwater Boat Motor." (Doc. 91-10 at ¶¶ 2–5).

Although certainly probative on the issue of whether the disputed patents are obvious in light of prior art, this Court is not persuaded by Go-Devil's insistence that the Wells Declaration is so significant that "[i]t would be error" to exclude it. (Doc. 108 at p. 2). Instead, the Court agrees with Gator Tail's observation that the Declaration is cumulative of evidence previously produced. For example, prior to the *Markman* hearing, defendant Mud Buddy retained Dr. Don Kueny to prepare a rebuttal to the report prepared by Gator Tail's expert, Dr. Ron Matthews. (*See* Doc.

20

113-1). Dr. Kueny's report specifically discusses Scavenger Backwater Motors, noting that Scavenger's "Longtail" motor was "in production well prior to [the Gator Tail patents]" and includes certain elements similar to the Gator Tail patents. (*Id.* at ¶ 8). Dr. Kueny's report was provided to Go-Devil on May 25, 2011, and to Gator Tail on May 31, 2011. (*See id.* at p. 1).

The availability of other witnesses to speak to the substance of the Wells Declaration undermines Go-Devil's claims to its importance. Accordingly, the Court determines that the first factor weighs in Gator Tail's favor. *See Port Terminal & Warehousing Co. v. John S. James Co.*, 695 F.2d 1328, 1336 (11th Cir. 1983) (affirming district court's decision to exclude testimony that would have been cumulative where the proposed witness was not properly disclosed); *see also United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 935 (8th Cir. 1999) (same).

### ii. The prejudice to Gator Tail if the evidence is admitted

Go-Devil asserts that there is no prejudice to Gator Tail in allowing the Wells Declaration because: (1) Go-Devil informed Gator Tail of its intent to call Mr. Wells as a witness at trial on October 24, 2013, fifteen days before producing the Wells Declaration as an exhibit to its Motion for Summary Judgment; and (2) Gator Tail's expert, Dr. Matthews, "*has already fully responded to the issues*" addressed in the Declaration. (Doc. 108 at p. 3 (emphasis in original)).

Again, the Court is not prepared to accept Go-Devil's assessment of whether Dr. Matthews's report is an adequate response to the Wells Declaration. Nor is the

21

Court convinced that Gator Tail was given fair warning regarding the Wells Declaration simply because it was on notice of the possibility that Mr. Wells would testify at trial. It simply blinks reality to assert that "*no actual prejudice*" follows from requiring Gator Tail to compensate for Mr. Wells's surprise Declaration so late in the game. (Doc. 108 at p. 3 (emphasis in original)). *See Geiserman*, 893 F.2d at 791 (recognizing that a two-week delay in designating an expert witness was sufficient to disrupt opponent's preparation for trial).

Accordingly, this factor also favors Gator Tail.

> ### iii. *The possibility of curing such prejudice by granting a continuance*

The Court has already explained its position regarding the problems with granting a continuance in this matter. In short, a continuance might cure the prejudice caused by Go-Devil's late disclosure, but it would result in additional delay, increase expenses to the parties, strain Court resources, and do little if anything to deter Go-Devil's dilatory behavior in the future. *See Barrett*, 95 F.3d at 381. At this point, this matter has dragged on nearly six years. No further continuance will be granted.

Accordingly, this factor, too, weighs in favor of striking the Wells Declaration.

> ### iv. *Go-Devil's explanation for failure to timely disclose*

Finally, Go-Devil insists that it "did not disclose Wells as a witness sooner because the Scavenger Backwater motors did not become relevant in this case until the Court issued its *Markman* claim construction ruling earlier this year," and,

22

further, that its delay is excused because "Scavenger motors were specifically mentioned by witnesses at three [prior] depositions in this case." (Doc. 108 at p. 3).

This Court has already expressed its view of Gator Tail's reliance on the *Markman* Ruling as justification for its untimely disclosures. To repeat, the *Markman* Ruling was issued in June 2013. (Doc. 82). Four months passed between that ruling and Gator Tail's initial disclosure of Mr. Wells. (Doc. 108-1). Go-Devil offers nothing to explain this delay.

Further, in this Court's view, Go-Devil's observation that Scavenger Motors was previously referenced by three other witnesses cuts *against* its position that delay was justified. These witnesses' discussion of Scavenger Motors put Go-Devil on notice as to Scavenger's relevance in the case as early as December 3, 2009. (Doc. 99-4 at p. 2 (excerpt of Warren Coco deposition identifying "another competitor called 'Scavenger' [that] builds a belt drive long tail")). Yet Go-Devil failed to act on this information until October 29, 2013. (Doc. 91-10 (Steven Wells Declaration)). Again, there is simply nothing to justify Go-Devil's attempt to introduce "the testimony of an eleventh-hour rebuttal witness." *Big D Enterprises*, 184 F.3d at 935. Accordingly, this factor also favors Gator Tail.

In sum, having weighed the factors, the Court agrees that Steven Wells's Declaration should also be stricken. Fed. R. Civ. P. 37(c)(1); *Tex. A&M Research Found.*, 738 F.3d at 402. Accordingly, Gator Tail's Motion to Strike shall be

23

granted, and Go-Devil shall not be allowed to introduce Steven Wells's Declaration at trial.

III.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Gator Tail's **MOTION TO STRIKE (08-cv-00124 Doc. 99; 08-cv-00125 Doc. 119)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall **STRIKE FROM THE RECORD** Dr. Garris's Supplemental Expert Report (08-cv-00124 Doc. 91-4) and all exhibits thereto (Doc. 91-5; Doc. 91-6; Doc. 91-7; Doc. 91-8; Doc. 91-9), including the Declaration of Steven Wells (Doc. 91-10).

**IT IS FURTHER ORDERED** that the Clerk of Court shall file this Order in the case-specific dockets for civil actions 08-cv-00124 *and* 08-cv-00125.

Baton Rouge, Louisiana, this 23rd day of January, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

24